# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF HAMPDEN, SEPTEMBER TERM 1862, AT SPRINGFIELD.

---

PRESENT :

Hon. GEORGE T. BIGELOW, Chief Justice.
Hon. CHARLES A. DEWEY,
Hon. THERON METCALF,
Hon. PLINY MERRICK,        } Justices.
Hon. REUBEN A. CHAPMAN,

---

## John J. Clarke *vs.* Thomas F. Cordis & others.

The legislature have power to pass an act empowering this court to authorize executors, administrators, guardians and trustees to adjust by arbitration or compromise controversies that may arise between different claimants to the estate in their hands, to which they and all other parties in being, claiming an interest in such estate, shall be parties; and providing that such arbitration or compromise, if found by this court just and reasonable in relation to its effects upon any future contingent interests in said estate, shall be valid and bind such interests as well as the interests of the parties in being; and giving authority to the court to appoint some suitable person to represent such future contingent interests.

Under *St.* 1861, *c.* 174, § 1, empowering this court to authorize executors, administrators, guardians and trustees to adjust by arbitration or compromise controversies that may arise between different claimants to the estate in their hands, to which they and all other parties in being, claiming an interest in such estate, shall be parties, and providing that such arbitration or compromise, if found by this court just and reasonable in relation to its effects upon any future contingent interests in said estate, shall be valid and bind such interests, parties in being, having only future contingent interests, need not be parties to an agreement of compromise.

Under Gen. Sts. c. 109, § 13, if a person liable to be put under guardianship resides without this commonwealth, and his estate in this commonwealth consists in part of personal property which is held in trust for him, the probate court of the county where the trustee resides has jurisdiction to appoint the guardian.

Under a devise of real and personal estate in trust, with directions to pay over the rent and profits of the real estate and the dividends and income of the personal estate to the testator's several sons for life, and upon the death of any of them to pay over the proportion which he would have been entitled to receive to his legal heirs, until the death of all of said sons, and then to convey and assign all of the real and personal estate to their legal heirs, the word "heirs," if there is nothing in the will to show that the testator intended otherwise, will be construed according to its common law interpretation, and will not include those who would be entitled to a share of the personal estate under the statute of distributions; and such persons need not be made parties to an agreement of compromise, under *St.* 1861, *c.* 174, § 1, of a controversy arising between different claimants to the devised estate.

BILL IN EQUITY, setting forth that the plaintiff, a resident of Roxbury in the county of Norfolk, is sole surviving executor and trustee under the will of Thomas Cordis, late of Longmeadow in the county of Hampden, deceased; that in said will, after certain specific bequests, the testator disposed of the residue of his estate in the manner stated in the margin; * that

---

* " All the residue and remainder of my estate, real, personal and mixed, not hereinbefore otherwise disposed of, after payment of my just debts, funeral charges and charges of settling my estate, as well as the charges of my executors, hereinafter named and appointed, I hereby give, devise and bequeath to my executors hereinafter named and to the survivors and survivor of them and the heirs and assigns of such survivor, to, upon and for the uses, intents and purposes, and with and subject to the powers, provisos, conditions and limitations hereinafter mentioned and expressed of or concerning the same, that is to say: To the use of my said executors, and the survivors and survivor of them, and the heirs, executors and administrators of such survivor, for and during the lives of my four sons, Thomas Frederick, Francis Temple, Edward, and Clarence Russell, and the life of the longest liver of my said four sons, upon the especial trusts, however, that my said executors, and the survivors and survivor of them, and the executors and administrators of such survivor shall and do, during the lives of my said four sons, and the life of the longest liver of them, take and receive the rents and profits accruing, and that shall from time to time accrue, from the real estate, and therewith make all necessary repairs and improvements, and pay all taxes, insurance, and other necessary charges and expenses in and about the same, and after all such payments deducted, shall, as soon as received and as often, pay over the residue of such rents and profits to my said four sons, during their joint and several lives, in equal proportions, to and for their respective sole and separate use and benefit forever. And after the decease of one or more

the testator, at the time of his death, left four children only, who were his sole heirs at law, to wit, Thomas Frederick Cordis, now of Wanwatosa, Wisconsin; Francis Temple Cordis and Edward Cordis, both of Longmeadow; and Clarence Russell Cordis, late of Rocky Hill, Connecticut; that Thomas F and

of my said sons, so long as either of them shall live, then shall pay over the proportion that such deceased son or sons would have been entitled to receive, of such residue of such rents and profits, had he or they been living, to the legal heirs of such deceased son or sons.

" And upon the further trust, to lay out and invest all said rest and residue of my personal estate and property, (except that my said executors and trustees may permit any investments that I shall have made in manufacturing, insurance or railroad, or other stocks, to remain thus invested, and shall not change such investments so long as they or the majority of them shall deem such investments safe or for the interest of all concerned,) in the stocks of the city of Boston, if they can be obtained at a reasonable price in the opinion of my executors. If such stocks cannot be obtained at a reasonable price, then in the stocks of the Commonwealth of Massachusetts, or of the United States of America, but in no case in individual securities, and it is my will, and I do hereby direct that all certificates of investments made by my executors, in such stocks, shall express that they are held in trust, and for whom they are thus held in trust.

" And upon the further trust to pay over all the dividends and income of said stocks over and above the costs and charges of my said executors and trustees in or about or relating to the said trusts, or any of them, as fast as they shall be received, in equal proportions to each of my said four sons, during their lives, and the life of the survivors and survivor of them, and after the decease of one or more of my said four sons, to pay over the proportion thereof, to which said deceased son or sons would have been entitled, if living, to the then legal heirs of such deceased son or sons, to and for their respective, sole and separate use and behoof forever. And upon the decease of all my said sons, upon the further trust and to the use of the legal heirs of my said four sons respectively, in equal proportions, by right of representation, and their respective heirs, executors, administrators and assigns forever, to their sole use and behoof forever.

" And I hereby direct, and the devises and bequests to my executors as above are upon the especial trusts, that they and the survivors and survivor of them, and the heirs, executors and administrators of such survivor, after the death of all my four sons, do and shall convey, assign, transfer and set over said real estate and stocks to said heirs of my said four sons respectively in the proportions above named by right of representation, to have and to hold the same to them respectively, and to their respective heirs, executors, administrators and assigns, to their sole use and behoof forever."

Edward have each a wife living, but no children; that Francis Temple has a wife, and one son, a minor; that since the probate of the will Clarence Russell has died, and that Laura Goodrich, otherwise known as Laura Cordis, with whom said Clarence Russell lived and cohabited for several years before his death, claims to have been lawfully married to him, and that two minor children of said Laura, now resident at Rocky Hill, Connecticut, claim to be his children and sole legal heirs; that a controversy arose between the surviving sons of the testator and the children of said Laura, as to whether the latter are the legal heirs of said Clarence Russell; that the surviving sons of the testator and the children of said Laura both claimed the portion of the property in the plaintiff's hands which was to be paid over and distributed to the legal heirs of said Clarence Russell, in pursuance of the terms of the will; that it was deemed expedient that a compromise should be entered into between all said parties, under the sanction of this court, pursuant to *St.* 1861, *c.* 174, § 1, and such agreement of compromise has accordingly been made in writing and signed, by virtue of which it was agreed and determined that the children of said Laura, their heirs and assigns, should take of the estate of the testator in every contingency contemplated by or which might legally arise under his will, three eighth parts of the income and principal of the share or shares to which they would have been entitled, and will be entitled if living, at the time of the final distribution and division of the estate according to the provisions of the will, if it had been established that they were the legal heirs of said Clarence Russell, and that they shall never claim any other or greater share, and that the surviving sons of the testator should in the same manner take the remaining five eighth parts thereof; provided however that the agreement should be executed and effective only when and on condition that it should be authorized and confirmed by the supreme judicial court; that this agreement was signed by the plaintiff, the surviving sons of the testator, the guardian of the children of said Laura, and the guardian of the child of said Francis Temple; that there were various other parties, who were named,

who had future contingent interests, and that there might be future contingent interests of parties not now in being; that the guardian of the children of said Laura was appointed by the judge of probate of Norfolk county ; and that the plaintiff submitted it to the determination of the court whether the said persons, who were not parties to the agreement of compromise, or any of them, were or were not necessary parties thereto, or to this bill, and whether the judge of probate of Norfolk county had or had not jurisdiction to make the appointment of the said guardian. The bill prayed that some suitable person or persons might be appointed to represent the future contingent interests of parties in being, or not in being ; and that, if the agreement of compromise should be found to be lawful, and that in giving effect to and executing the same he would be protected, the same might be authorized and confirmed, and that appropriate conveyances or releases in confirmation of the same might be decreed to be made.

The surviving sons of the testator, the said Laura, the guardian of her children, and the guardian of the child of Francis Temple Cordis, all appeared and admitted the various allegations of the bill to be true, and prayed for or assented to the confirmation of the agreement of compromise. And, it appearing to the court that, in addition to the parties now in being, claiming an interest in the estate, who are parties to the suit and to the agreement of compromise set forth in the bill, there might be future contingent interests in said estate, of parties in being, referred to in the bill, and others, and also future contingent interests of parties not in being, referred to in the bill, and others, which might possibly be affected by the agreement of compromise, and by any decree of this court authorizing and confirming the same, it was ordered that John Wells, Esquire, of Chicopee, be appointed to represent such contingent interests in this suit and in the subject matter thereof. Mr. Wells afterwards submitted a statement to the court, setting forth that, having considered only the questions of expediency and propriety involved in the proposed compromise, and being fully convinced that the same is both proper and expedient for each class

of interests represented by him, he, in behalf of said future contingent interests, and in the capacity and relation thereto assigned to him by the court, assents to and concurs in the compromise aforesaid, and requests that the same may be confirmed by the court.

*S. Bartlett,* for the plaintiff.

*B. F. Thomas,* (*H. Morris* with him,) for some of the defendants, cited, in addition to cases cited in the opinion, as to the meaning of the term " legal heirs" in the will, *Mounsey* v. *Blamire,* 4 Russ. 384 ; *Boydell* v. *Golightly,* 14 Sim. 327 ; *Haslewood* v. *Green,* 28 Beav. 1.

BIGELOW, C. J.* The plaintiff, in his capacity of trustee under the will of Thomas Cordis, deceased, has entered into an agreement of compromise, set out in the bill, concerning the disposition of a portion of the trust funds in his hands, about which a controversy has arisen among different parties claiming a present interest therein. This agreement has been made under the authority of *St.* 1861, *c.* 174, § 1, which is copied in the margin.† A suitable person has been heretofore appointed by the court, in pursuance of the provisions of the statute, to represent all persons not parties to the suit, who may have rights or interests in the property which is now the subject of controversy, to arise out of events which may hereafter happen. From his report it appears that, on a careful examination, he is of opinion that the agreement of compromise is both proper and

---

* CHAPMAN, J. did not sit in this case.

† " The supreme judicial court may authorize executors, administrators, guardians and trustees, to adjust by arbitration or compromise any controversy that may arise between different claimants to the estate in their hands, to which such executors, administrators, guardians or trustees, together with all other parties in being, claiming an interest in such estate, shall be parties. And any award or compromise made in writing in such case, shall, if found by the court just and reasonable in relation to its effects upon any future contingent interests in said estate, be valid and bind such interests, as well as the interests of the parties in being : *provided, however,* that where it shall appear that such future contingent interests may be affected, the court may appoint some suitable person or persons to represent such interests in such controversies, upon such conditions as to costs as to the court shall seem equitable."

expedient for each class of interests represented by him, and he assents to and concurs in the same, and requests that it may be approved and confirmed by the court. Upon consideration, we are satisfied that the controversy which has arisen concerning the disposition of that part of the testator's estate which was originally devised in trust for the benefit of his son Clarence Russell Cordis, now deceased, is one which may properly be the subject of adjustment and compromise; that it involves difficult and doubtful questions both of fact and law; that its determination by a regular course of legal proceedings would be attended with great uncertainty as to its final result; and that from various causes it might be difficult, if not impossible, to accomplish thereby perfect justice to all the parties interested. Under such circumstances, it seems to us that it was judicious and expedient to make the controversy a subject of compromise, and that the agreement into which the parties having a present interest in the property have entered is just and reasonable, not only as between themselves, but also " in relation to its effects " upon the future contingent interests in the estate. Viewed, therefore, as a mere question of expediency and propriety, there would seem to be no room for doubt that it is the duty of the court to give their sanction to the agreement set out in the bill.

But it is not sufficient that the pecuniary interests of the parties to the suit, and of those contingently interested in the property, will be promoted by a confirmation of the agreement of compromise. We must look farther to see whether there are any legal obstacles, either of a general nature or in the particular proceedings now before us, which ought to lead us to withhold our assent from the proposed adjustment of the controversy.

Several objections have been suggested which are certainly entitled to careful consideration. The leading and most important one is founded on a doubt of the constitutional authority of the legislature to confer on trustees, guardians and other persons holding property in trust, the power to enter into agreements concerning its disposition, such as are contemplated by the statute, and which may affect the rights of persons contingently

interested therein, who are either not in being, or whose rights are not so apparent that they can properly be made parties to the proceeding. But we are unable to see that there is any solid foundation for this objection. Under the constitution of this commonwealth, the authority of the legislature is not restrained by a specific and limited grant of powers, or by an enumeration of subjects or classes of subjects to which its functions are to be strictly confined. The framers of the constitution did not undertake to define the precise boundaries beyond which legislative action could not be extended. They proceeded on an enlarged and comprehensive view of the powers which ought to be vested in a legislature by a constitution, the leading purpose of which was to establish a government of laws and not of men. By the " Declaration of the Rights of the Inhabitants of the Commonwealth," they laid down the general rules and principles on which the constitution was founded, and by which the different departments of the government were to be regulated and controlled in the administration of the powers and duties with which they were respectively intrusted. Beyond this they did not limit the authority of the legislature. On the contrary, they took care to vest in express terms in the general court full power and authority to make, ordain and establish all manner of wholesome and reasonable orders, laws, statutes and ordinances, so as the same be not repugnant or contrary to the constitution, as they shall judge to be for the good and welfare of the Commonwealth and of the subjects of the same. Const. of Mass. *c.* 1, § 1, art. 4. That the statute under which the agreement of compromise set out in the bill was entered into is a reasonable and wholesome law, there is no room for serious doubt. It is founded on the well established maxim of public policy, *interest reipublicæ ut finis sit litium.* It enables persons holding property in trust to adjust controversies concerning it in the same manner as parties acting in their own right compose and settle disputes affecting their own estates. It furnishes an easy, convenient and equitable mode of determining difficult and doubtful questions arising in the administration of trusts, the settlement of which is indispensable to the further and complete

fulfilment of the purposes for which the trusts are established It creates a general rule applicable alike to all cases in which the rights of *cestuis que trust* to property, when drawn in question, may be ascertained, and conflicting claims may be put at rest without the risk, delay and expense of tedious litigation. It provides, in effect, for a course of procedure to be carried on under judicial inspection and sanction, by which not only present existing rights may be speedily and finally settled, but future and contingent interests may be carefully protected and secured against improvident or collusive adjustments and compromises by those who have the possession and the immediate disposition of property. A statute so carefully framed and so manifestly calculated to produce benignant results ought to be sustained, unless it clearly conflicts with some express provision of the constitution. It certainly is not open to the objection that it violates the safeguard secured by the tenth article of the Declaration of Rights, which provides that every individual has a right to be protected in the enjoyment of his property according to standing laws. It is not an act of legislation designed to meet a special case, or to abrogate the general rule of law in its application to the disposition of a particular estate. It avoids the evil of special legislation by establishing a rule of universal application. Nor in its operation on contingent estates, in cases where the persons who may be entitled to future rights or interests in the property are either not in being, or cannot, from the uncertain and remote nature of their interests, be made parties to the proceeding, can it be justly said that the effect of the statute may be to deprive such persons of their right to property without their consent. Such contingent rights and interests are duly protected by the provision which requires the court to appoint some suitable person whose duty it shall be to represent them in all proceedings under the statute, and by the requirement that the court shall adjudge, on due examination and inquiry, that the proposed award or compromise is just and reasonable in its effect on all contingent interests in the estate in controversy. These provisions certainly afford a safe substitute for the assent of parties, in all cases where the uncertain or

remote nature of a future right or interest renders it impracti cable to obtain the direct concurrence of those who may, on the happening of a future contingency, become entitled to the property. If such an enactment be not valid, it would be impossible for trustees or guardians to enter into any compromises, or to agree to an arbitration concerning controversies relating to property in their hands, the future disposition of which depended on contingencies, however expedient and beneficial an adjustment or settlement might be to those who eventually might become owners of the estate. With the safeguards which the statute has provided for the protection of future contingent rights and interests, it in effect enables those who have the present right and interest in property to create a more beneficial tenure or title for those on whom, by the happening of a subsequent event, the right to the property may devolve. Such an exercise of authority is clearly within the constitutional authority of the legislature, because the assent of all parties interested in property may be fairly and properly presumed to an act of legislation which tends to create in them a more favorable tenure or a more valuable interest. *Holbrook* v. *Finney*, 4 Mass. 568. *Miller* v. *Miller*, 16 Mass. 59.

But it seems to us that the statute in question is not only free from all objection on constitutional grounds, but that it is in strict conformity with the well established principles of our jurisprudence. The doctrine of representation, as understood and administered by courts exercising chancery powers, recognizes the rule that all persons interested in property which is the subject of litigation need not be made parties to the proceedings. All that is required is, that a person should be present as a party who will act as the present owner and protector of the nterest or right which is drawn into controversy. If this interest or right receives an effective protection from those who are parties, the proceedings take place with an equal certainty of justice as if all persons consequentially or derivatively interested were joined. Where it is the right or interest only which the court is called on to consider, if those persons are made parties who, with reference to this right or interest, are

certain to bring forward the entire merits of the question in contention, the object is attained for which the presence of all parties interested would be required, and the court may proceed to hear the cause and make a complete and final decree, binding on all, without putting any right in jeopardy. On this principle it has been held that a tenant for life of an undivided share of an estate, with remainders to his unborn sons in tail, may file a bill for a partition, and the decree will be binding on the sons when *in esse.* *Gaskell* v. *Gaskell,* 6 Sim. 643. In such case it is presumed that the tenant for life will duly represent the inheritance, and act as well for those who are to inherit as for himself, because their interests in the object of the suit are identical. If the interest of those who are parties is such as to insure a fair trial of the matter in issue, the court will take jurisdiction and make a final decree. The persons who are represented are in effect treated as if they were actually present. The court looks to the substantial interest in controversy, and not to the particular mode of enjoyment, for the purpose of applying the doctrine of representation ; and if it is found that the party before the court is one whose right or interest is such as to make it certain that the matter in controversy will be fully presented, it is sufficient to warrant the court in taking jurisdiction of the case, and in passing a final decree. *Lloyd* v. *Jones,* 9 Ves. 37. *Giffard* v. *Hort,* 1 Sch. & Lef. 409. *Dayrell* v. *Champness,* 1 Eq. Cas. Ab. 400. *Sohier* v. *Williams,* 1 Curt. C. C. 494. This principle is applicable to the case at bar. The interests of the *cestuis que trust,* who are entitled to the income and interest of the testator's estate during their lives, and who are parties to this suit, are identical with those of the persons who are to take the several shares of the estate on the decease of these *cestuis que trust* for life. The representative, appointed by the court, of the future contingent interests in the property in controversy, expressly states that the proposed compromise is precisely the same in its nature and operation upon such future interests as upon the present interests of the representatives of the respective classes by whom the compromise is made, and that the controversy which has arisen affects the future contingent interests in the same manner and to the

same degree that it affects the present interests of the immediate parties to it. Such being the case, there can be no foundation for the objection that the statute confers on the court any unusual or extraordinary power, or that it tends to devest the title to property without the assent of the owner. Such assent exists by implication through that of the representatives of those contingently interested in the estate who are parties to the compromise and to the present proceedings.

We are therefore unable to see any valid objection to the statute in question on constitutional grounds. Indeed, much more extensive powers have been exercised by the legislature, in the enactment of statutes affecting the rights and interests of persons not *in esse,* or having contingent claims to property, which have been long in force, and the validity of which has never been called in question. Such was the *St.* of 1791, *c.* 61, (Gen. Sts. *c.* 89, § 4,) giving to tenants in tail the power to bar by deed the issue in tail; such, too, are the provisions in *St.* 1804, *c.* 59, (Gen. Sts. *c.* 89, § 4,) providing a method for barring remainders and reversions expectant on estates tail; and in *St.* 1851, *c.* 14, § 1, (Gen. Sts. *c.* 89, § 6,) for the barring of equitable estates tail. Besides these general enactments, there are numerous resolves designed to affect particular estates, which afford examples of the exercise by the legislature of an authority to change the nature or tenure of property in cases where persons having remote or contingent interests were either not in being or could not have assented to the alteration. See *Sohier* v. *Mass. Gen. Hosp.* 3 Cush. 483. *Clarke* v. *Hayes,* 9 Gray, 426. Such enactments certainly afford very strong precedents in support of the statute, under the authority of which the agreement of compromise set out in the bill was made.

The remaining objections which have been suggested as entitled to consideration in their bearing on the validity of the present proceedings relate to the question whether the proper parties have executed the agreement and are now before the court. The first of these suggestions is, that there are persons in being who are neither parties to the agreement nor to this suit, who may by the happening of a certain contingency

become entitled to an interest or share in the property in contro
versy. But, by the true construction of the statute, such persons
are not necessary parties. The great object which the statute
intended to effect was, to supply an authority to persons hold-
ing property in trust to adjust and settle by compromise or
by arbitration present existing controversies among different
claimants to property in their hands. Therefore it is only those
who are "claimants to the estate" in controversy, that is,
those who assert a present right or interest by which the title
to the property held in trust is drawn into doubt and dispute,
whom the statute requires to be parties to the agreement. It
was certainly never intended that persons whose interest was
remote and contingent and might never become vested, and
who had no immediate right of enjoyment, should be called in
to take part in the proceedings. Such a construction would
defeat the great object of the statute. In many cases it would
be impracticable, on account of the number of persons who
might be contingently interested, to make them parties. And
it would put it in the power of any one, however remote his in-
terest might be, and however doubtful might be the contingency
in which his interest would vest, to defeat a compromise, al-
though it might be wise or expedient for those having the
present right of enjoyment, and for others who in a near and
probable contingency might have an immediate claim to the
estate. It seems to us, therefore, that the phrase, " parties claim-
ing an interest" in the property in controversy, according to
the meaning of the act, does not embrace persons whose in-
terests are only contingent; but that such contingent rights
and interests are intended to be protected and fully represented
by those provisions of the statute to which we have already
referred.

It is further suggested that the agreement of compromise is
not properly executed in behalf of the children of the deceased
son of the testator, because their guardian who has signed the
agreement in their behalf was not duly appointed by the judge
of probate of the county of Norfolk. By Gen. Sts. *c.* 109,
§ 13, it is provided that where a person liable to be put under

guardianship resides without the state, a guardian may be appointed on due proceedings had by the probate court of any county in which there is any estate of such absent person. The *cestuis que trust* in this case are infants domiciled in the state of Connecticut. The trustee under the will of the testator resides in the county of Norfolk. The legal title to the property is vested in him, and against him the claim of the infant *cestuis que trust* is to be enforced. In the place of his residence the personal estate is liable to taxation. Gen. Sts. *c.* 11, § 12, cl. 5. It would seem to be very clear that the *situs* of this personal estate is in the county of Norfolk. It certainly can have no other in this commonwealth. If we were to hold that property so situated could not confer jurisdiction to appoint a guardian on the probate court of the county wherein the trustee dwells, then it would follow that there is no authority in the probate court in any county to appoint a guardian over a foreign *cestui que trust* who is an infant, if the trust estate held for his benefit consists of personal estate only. Such a conclusion would defeat the plain intent of the statute.

The only remaining doubt, which has been suggested in reference to the validity of the execution of the agreement of compromise, arises on the meaning of the words "legal heirs" as used in the will of the testator, in the disposition of his estate on the death of his sons.

Under the will, upon the death of any one of the sons, the proportion of the rents and profits of the real estate, which he would have received if living, is to be paid "to the legal heirs of such deceased son." So also "the dividends and income" of the personal estate are to be paid "to the then legal heirs" of such deceased son. Upon the decease of all the sons, the personal property is given "upon the further trust and to the use of the legal heirs of my said four sons respectively, in equal proportions, by right of representation, and their respective heirs, executors, administrators and assigns forever." The will further directs the executors and trustees, after the decease of all the testator's sons, to "convey, assign, transfer and set over said real estate and stocks to said heirs of my said four sons

respectively, in the proportions above named, by right of representation; to have and hold the same to them respectively, and to their respective heirs, executors, administrators and assigns, to their sole use and behoof forever."

Like all other legal terms, the word " heirs," when unexplained and uncontrolled by the context, is to be construed according to its strict technical in·port, in which sense it designates the persons who would by the statute succeed to the real estate in case of intestacy. In this sense it is obviously used by the testator in the clause in question. It was not intended to denote succession, that is, to vest the estate in the legatees as successors of or substitutes for the sons of the testator, so that they would take the same estate in nature and quality as that which would have come to them by descent. They are to take by force of the will as purchasers. The word is used to designate the persons who are to take the real and personal estate as independent objects of the gift. It is therefore to be interpreted as a mere term of description of a class of persons who in the prescribed contingency are to take the estate. There being nothing in the will to vary or change the natural and ordinary sense of the word " heirs," it must be held to describe those persons who on the death of the sons would take the real estate, if it had been held in their right, and had not been the subject of a devise. Besides; it is the manifest intent of the testator that the property which was to pass under this devise to the heirs of his sons should embrace both real and personal estate. Both species of property are to be held and enjoyed together by the same persons. They cannot be divided, so as to vest the personal estate in one class of persons and the real estate in another It is therefore necessary to adhere to the words of the will, and to permit those persons who are technically described as legal heirs to take the whole.. It follows, that it was not essential to join as parties those who were not comprehended within the strict legal interpretation of that term. Williams on Executors, (4th Amer. ed.) 949. *Gwynne* v. *Muddock*, 14 Ves. 488. *De Beauvoir* v. *De Beauvoir*, 3 H. L. Cas. 524.

On the whole case, we are of opinion that the agreement of

compromise is rightly executed, and that it is the duty of the court to order that it be approved and confirmed.

*Decree accordingly.*